Please be seated. Good morning everyone. Once again, we're delighted to be sitting here in Pasadena and we are grateful to have with us our colleague from the Seventh Circuit, Judge Hamilton. Welcome and thank you, Judge Hamilton. The cases will be called in the order listed on the docket. The first case on calendar is United States v. Riner. Counsel for appellant, please approach and proceed. Good morning, Your Honors. Robert Schwartz and Courtney Cifali for the appellant, Christian Michael Riner. I'm reserving two minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Yes, Your Honor. Thank you. This case is controlled by United States v. Anderson. The question is whether the officers created an administrative record sufficient to serve the purposes of the inventory search exception. They did not. They knew the vehicle contained numerous personal items, including firearms, ammunition, tools, and valuable property, yet they documented none of it. They wrote on the CHP 180 form, the inventory form, valuables within, but identified nothing. So does this case turn on a clerical issue becoming a Fourth Amendment violation? I'm having a hard time following the logical conclusion to your argument. I mean, they did fill out the form, but your argument is they didn't fill it out completely enough. Is that it? No, no, Your Honor. In the United States, I think we all can agree that Anderson is the controlling precedent, Your Honor. Well, the question is whether or not the community caretaking doctrine applied to seize the vehicle and tow it. And then the question is, I guess you're challenging the motivation of the officers as actually being more of a criminal investigative motive than a community caretaking one. Is that a fair characterization of your argument? I agree with that, Your Honor. However, I would do it and I think that I would do it in reverse, that their personal motivations, Your Honor, informs whether or not that they were actually taking care of the community. But what do we do with the district court's factual finding that the officers did not subjectively do so for purposes of furthering a criminal investigation? Your Honor, I understand the standard of review is that you would give preference. You're not arguing that that factual finding is clearly erroneous? I think that it is clearly erroneous, Your Honor, and also that Judge Carney, who I love, he did not have the benefit of Anderson at that time, Your Honor. But we're talking about a factual finding here, which has always been governed by the clear error standard. That's true. Again, I think that with regard to not having the benefit of understanding how the inventory exception and understanding just sort of the parameters of it, I think that it also can color, if you will, your view of how you view the facts. Is that your strongest piece of impeaching evidence, the incomplete CHP Form 180 that must vitiate the district court's factual finding after listening to the officer testify that he was credible and that he did not have the subjective intent to seize the car so he could search it? Your Honor, I respectfully know that is not our strongest argument, that it was the form, Your Honor. I think that you can look at the sequence of events. If you look at it, if you take a step back from the case and just look at what occurred, Mr. Reiner was asleep in a vehicle. They come in. They knock on it. The court has the benefit of the we submitted the actual audio. You can hear how aggressive it was. They pull him out. They search him. They find nothing. And then he volunteers, you can't search my car. Much like in Anderson, by the way, I would point out. And whether or not that this annoyed the officer, can't say. That's not on the record. But surely he asked why. The officer testified that once he knew that there was an outstanding arrest warrant for possession of controlled substances that it kind of raised a thought in his mind, well, why does he not want me to look in the car? Right. But that that was evidence that was brought out at the evidentiary hearing. And the district court heard that. But what he testified was, is that he was curious about what was in the car and that he believed that there was a pipe or something. And that's why after you have to hear it in context, right? He says in the sequence of events. So Mr. Reiner says you can't search my car. Things happen. That's around two minutes and change around five minutes and change. He says, is there anything in the car I need to be worried about? Which he testified was for officer safety. Is there a gun in there? But at this point, he was detained. And while they checked to see to verify the warrant. Right. While he was why they verified the warrant. He asked the second time, is there anything in the in the car that I should be worried about this point? He there is no evidence that he was in arms reach. And this is not one of this is not a search into incident to arrest case. And then at that point. So hadn't hadn't the warrant been verified and the sergeant directed him to take him into custody because it was a mandatory arrest? I think that's at 11 minute 11, your honor. I think we're still in five. OK. And then but the court, you know, knows a record probably better than I do. So I read it. And then so the and then at the end, your honor, he then says, can I search the car? Like he's already he's been already told three times. And then can I search the car? No, you can't search the car. And and here we are. Right. So there's nothing wrong with the repeated request to search the car. Is there? There is nothing wrong with it. There's nothing wrong for, you know, whether or not you can ask for the weather. You can do whatever. There's nothing. There's nothing wrong with it. But it certainly informs going to Judge Coleman's question is when you look at the totality of the circumstances, it becomes clear that this that the that the towing and the is and the inventory search is investigatory, not serving the administrative purpose. He wants to get in the car. That's not what the district court found. Could I ask you a quick question about the defendant's late report of having made this offer to have his wife come pick up the car? You can ask. As I understand it, that was not sworn. It came in what amounted to a motion to reconsider before the second district judge to handle the case. Right. It's something he said orally. Right. He made an oral statement. And actually, your honor, that was in front of the first district judge at a status conference. We were going to trial at that time, or he was going to trial, and I was advisor at council. And he made he made a statement. And, again, your honor, you may because this is your question, you probably know it better than I do. But that was my recollection of the hearing was he was making that statement at that time. It was not included in the original affidavit submitted in support of the motion to suppress, correct? It was not. And as I understand it, the central district has a rule on motions to suppress that says you need a declaration that states all facts, then known by the defendant, that support the motion, right? You do. That is a rule. Let me ask a couple of questions about this because, as I understand it, you've been arguing that if that offer was made and if Officer Huang declined the offer, that would have been additional evidence of pretext, right? It would have been additional. You're not arguing that police are constitutionally required to accept such offers? I am not. I am not arguing that. And my time is up. I understand. But with the judge's indulgence, I'd like to also raise a couple of questions about the Second Amendment issues in the case. But I guess I'm unclear from the record we have, I'd be interested in the government's point of view about this, about the evidentiary status of that late disclosed offer. Is it in front of us? Your Honor, it's in the record. The record is an unsworn assertion, right? It's an unsworn assertion, and it was uncontested by the government. It was uncontested by the government at the status hearing. It was uncontested in, again, if my memory serves, it was not noted or contested by the government in their answering brief. But doesn't the – I thought that the local rule prohibited the introduction of additional evidence under the guise of a post-hearing motion to reopen or to reconsider. At that point, Your Honor, it's not a post – I mean, can I clarify? Sure. Is the court asking, since he makes this statement and it's not during the motion to suppress itself, you're saying that the court, that this court can't somehow consider this? We're not talking about this court. We're talking about the rules that were applicable in the district court. I mean, the rule basically is designed to focus the court's attention and the party's on the issues that need to be resolved in an evidentiary hearing. That's why you have to include them in sworn declarations in support of your motion for the hearing. He didn't do that. And so the question is whether or not we can consider as part of that evidentiary record when it was never presented properly to the district court to be factored into its credibility analysis. I understand – Is that a fair question? It's a very, very fair question, but I would also remind respectfully the court that at this point in time, he had been pro se. And you were standby counsel. I was standby counsel, but standby is – You were standing by when he wasn't taking advantage of your presence. Right. I get it. The court's read the record, and it was a difficult line to walk. And I will – so at this point, yes. But I would ask that the court not elevate, just like the government did in their answering brief, a form over substance. Yes, there are rules. The local rules say that, but the guy was pro se. If I would have done that, then I would expect you guys – I mean, Your Honor – You saw it coming.  I would see – I could see how that would be an important fact for you. But that's not what we have here. We have a pro se litigant doing his best, and in my humble opinion, he did a pretty good job. Pretty good job. I'm sorry. We also have these Second Amendment issues in front of us. As I understand it, Duarte resolves the 922G1 issue for now, right? Yes, Your Honor. You've preserved it? I've preserved it. On the G9, what's your thought about how likely the Martinez panel is to resolve the issue that's in front of us? I can't remember who the panel is, otherwise I'd tell you what I thought my chances are. We want this to be a conversation, all right? But I will let the court know that I find it – I would find it very hard for either this panel or that panel to find that 922G9 is not unconstitutional as, you know, just facially unconstitutional, and definitely as applied. And the reason why – for all the reasons I stated before and Martinez, I don't think that you lose your Second Amendment rights forever on a misdemeanor. I just – I don't. But the way this charge was set up, as I understand it, he pled to the factual basis for both G1 and G9, correct? He did, Your Honor. And so if either stands, then the conviction stands, correct? Yes, Your Honor. Okay, thank you. Thank you, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. Thank you. All right, we'll hear from the government. Good morning. May it please the court, Hava Morel on behalf of the United States. I want to begin with Anderson here, and it seems like the court has picked up on the obvious procedural distinction here between our case and Anderson, which is that our district court made factual findings about the officer's motives, whereas in Anderson, Judge Klausner made no findings about the officer's motives. And here, Judge Carney's findings were not clearly erroneous. It seems that defense counsel has backed away a bit from the clerical error in the CHP 180, so I'm not going to focus too much on that. Instead, defense counsel talked a lot about the sequence of events, and the government agrees that the sequence of events in this case is significant because if the court listens to Audio Exhibit A, from the outset, Officer Hwang denies any interest in searching the defendant's car. Indeed, at 215 of the Audio Exhibit, he says, I don't really care what's in the car, I just want to verify this warrant. His sole interest in his interactions with the defendant, or his principal interest, I should say, is determining whether arrest was mandatory under this warrant. Counsel, you don't deny at some point he started to ask for permission to search the car? He did ask. First, he said, is there something I should know about the car? And that was an officer safety question. And the second time, he did ask for permission to search the car, but as Magdala clearly states, you can have a dual motive. Correct. Yes. We're not denying that he did ask to search the car, and that he was denied permission, and that happened at 529. But even after he's denied permission to search the car, what does he do? He doesn't say, well, I'm going to try to find a way to get into it. He doesn't start searching the car right then and there. He still says to the defendant, my plan was just to cite you out, but I have to wait to hear from my sergeant whether this arrest is mandatory. So even after he's denied permission, he's telling the defendant, my plan is to just let you go. My plan is not to search this car at all, which is really the best evidence here that this officer wasn't principally or purely motivated by a criminal investigative purpose. I also want to talk about the other lack of indicia of pretext here, compared especially to Anderson. In Anderson, the officers had listed only the evidence, the firearms located in the car, and by contrast here, the officers listed multiple items of non-evidentiary value in the CHP 180 form, including the miscellaneous clothing, the laptop, the BB gun. But opposing counsel makes the point that there were a number of items that were not listed. Correct, but Gray and Magdarella are still good law after Anderson, and this case is somewhere in the sweet spot between those two cases, because in Gray, for example, the officers listed only the firearms in the remarks section of the inventory form, and they completely omitted the other items, but just booked them as evidence. And this court said, failure to complete an inventory list is not on its own a material deviation from policy, and it even found that in those circumstances, the officers had substantially complied with the policy, and they looked, they said they had complied in material respects, and they looked at other factors, including the officers obtaining a tow truck driver's signature, noting the date and time of the tow truck driver's arrival. Those indicia are also present in this case, but we also have the officers' statements disclaiming any purely investigative motive in this case. So your argument is that a clerical error is not a constitutional violation? Correct, and I think even Anderson says as much. Anderson stands for the proposition that a clerical error can be considered in the totality of circumstances in assessing an officer's motive, but it is not purely determinative, and it wasn't determinative in Anderson either, because in Anderson, you had the proximity between the detention and the commencement of the inventory search. You had the officers' statements at the outset expressing an investigative motive, where they're talking about the money in the defendant's wallet, and they're talking about why the defendant has gloves, why his truck is wet. All of those facts are missing from this case, which is why this case is easily distinguished from Anderson. Could you address this offer to have his wife pick up the car? Yes, Your Honor. So as Your Honor correctly noted, that statement was made at the July 16, 2024, status conference before Judge Anderson, and it was really a hearing on the reconsideration motion. There is no evidence in the record, either in the sworn declaration from the defendant or from the suppression hearing, that the defendant requested that his wife pick up the car. Did the government object to that statement at all or respond to it at all? I don't believe the government responded to it at all because it was not made during an evidentiary hearing and didn't have any evidentiary significance at the time. It was just a statement from a pro se counsel during the hearing. From counsel? I'm sorry, pro se defendant. Thank you, Your Honor. I assume the court was conducting the status conference to determine whether or not there was going to have to be a trial here in light of the prior ruling denying the motion to suppress. Yes. I think the status conference was intended to, because the case had been transferred from Judge Carney, it was to reassess Judge Carney's motion and eliminate rulings and also determine to assess the reconsideration motion under Anderson. But I also think that if the court looks to, if you want to probe into the veracity of the defendant's statement, the court can look to audio exhibit A at 954, and there the defendant is being asked for an emergency contact and he denies having any information about an emergency contact. He doesn't have a number. He doesn't have a name. And so it makes it highly implausible that he's going to be asking for his wife to come pick it up when he's not even volunteering her as his emergency contact. But the court doesn't really need to even reach the wife issue because under Torres in footnote 2 here, this court has said that the Fourth Amendment does not compel officers to exhaust alternatives. No, and that's why I was asking earlier. I understand counsel on the other side to be arguing not that they were constitutionally required to accept such an offer, but rather that the police response to such an offer may be relevant in evaluating purpose and credibility. So I think it's still relevant if it's properly in front of us. Can I ask you about the so-called high crime area dimension of this community caretaking function? Who's supposed to defer to whom on that determination? Police, district judge, court of appeals? Well, I think the district court made factual findings about this being a high crime area, and those factual findings are reviewed for clear error. And part of the basis of that factual finding was the testimony of Officer Hwang, including his affidavit. And so special deference is owed to that factual finding. I assume the officer was testifying to what crime analysis reports for that part of the city. Plus, he was the beat officer for that area, so he knew the area pretty well. Yeah, he knew the area. He had also appended crime statistics as exhibits to his affidavit in the opposition to the motion to suppress. And so he had testified as to that, and the court credited that. But I understood defense counsel's argument to say, well, it's not clear that the officer was aware of those statistics at the time that he actually decided to impound the vehicle. But there are other indicia from the time of the impoundment that does show that the officer was aware that this was a high crime area. And I can provide those to the court. Counsel, could you address the Second Amendment issue before your time expires? I think Judge Hamilton asked how likely the Martinez panel is to decide this issue, and I checked the docket last night. And there was an order filed under seal yesterday, so I'm not privy to what that contained. But the most recent public pronouncement from the court was in October of 2025, where they denied the appellant's joint motion to stay the appeals pending the Supreme Court's decision in Himani, which was argued in the beginning of March. So it seems like they are poised to take this case. Do you agree that if either G1 or G9 is constitutional, this conviction stands? Yes. Okay. I was a little surprised to see your waiver argument in your brief. As I understand it, the plea agreement expressly preserved the defendant's ability to challenge the constitutionality. So I want to back up and say, at this point, I think this argument is – first of all, I don't think it was a waiver argument. I think it's a plain error argument. We – I think under Rule 12c3, the failure to bring a Rule 12b3 motion is waiver absent good cause. And what the government did here is they said, okay, well, we're not going to argue waiver because it's in your plea agreement. We gave you a conditional plea agreement that specifically asked you – or allowed you to challenge the 922G9, or the 922Gs generally. So we're not going to argue waiver under Rule 12c3, but we're not going to agree that you get de novo review here. Rather, you get plain error. And I think regardless of that dispute, it's largely academic because by the time this panel reaches or has to decide the 922G issue, it will or will not be plain error because Martinez will have preceded this case. I have to say I had the same reaction that Judge Hamilton did. Wait a second. This is a conditional plea. Of course he can challenge the results of the evidentiary. Well, I think that it is a hyper-technical argument, and I understand the optics here. It's just an odd argument to hear in a conditional plea case from the government. Right, but I mean if you look closely at the conditional plea language, Your Honor, we don't – unlike with the suppression motion where we say there was a ruling in the suppression motion, we actually don't say that there was a ruling on the 922G issue.  All right. Thank you, counsel. Thank you, Your Honor. Let's have one minute for rebuttal. First, I want to apologize. It was at the other status hearing. I misremembered it. So start with that. Second, the court makes a comment about high crime area and what this police officer knew. I would ask the court to take a look at 2 ER 279 and just the language of it. First, in paragraph 2 in 278, he had been on the job at the time he signed the declaration for a year and a half. At the time that he actually had done this, you know, this incident occurred, was one year, give or take. Also – Yeah, but I mean he testified to events that were occurring literally the day before. I mean, okay, so he's a rookie, but he could still be aware of the fact that it's a high crime area because he works that area. Well, I would ask the court to carefully read his declaration at 279 because in paragraphs 5 and 6, he uses the past tense when describing the events. He says, I asked the defendant. I had the police dispatchers conduct a record check and so forth. They're all in past tense. When he gets to what the high crime area is, he starts using the present tense. He says, I know between September 2020 and January 2021, the months immediately preceding. This was written by – let's be real about it. This was written by the prosecutor, and he's saying, now I know, right? But counsel, we're back to the same problem of the district court specifically relied on that evidence, found the officer credible, and now you're asking us to rewrite the credibility. I'm just responding to the – I'm responding to the argument about high crime. And it just isn't – I know I'm – So are you arguing that there was no – this was not a high crime area in the face of that evidence? Well, I know this is late to the game, but if the court is asking me, they used a one-mile radius as a – for this target? Your Honor, I honestly think they have forgotten eighth-grade math like pi R squared because one-mile radius is 3.14 square miles. That's about – what they use – Oh, I – so, Your Honor, but you're here in Pasadena, Your Honor. If you go a mile – well, in L.A., I could say. You go a mile in every direction. You go to, like, ultra-rich to ultra-poor or whatever the case may be. So this is not indicative. I mean, these statistics – But there was specific testimony about a car clout that had occurred right outside the parking garage the day before. But that's a catalytic converter, and that's not in the parking garage. And the other one was – Your Honor, I know – If we have a finding, counsel, this is an uphill battle for you. It is an uphill battle, but the court asked, and so that's what I'm saying. All right. And we heard your response. Thank you, Your Honor. Thank you, counsel. Thank you very much. Thank you to both counsel for your helpful arguments. The case is argued and submitted for decision by the court.
judges: TALLMAN, RAWLINSON, Hamilton